UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
and STATE OF MICHIGAN,

                Plaintiffs,

ex rel. DAVID L. FELTEN, M.D.,
Ph.D., et al.,

                Plaintiffs/Relators

v.

WILLIAM BEAUMONT
HOSPITALS, et al.,

                Defendants.
_____/

Case No. 2:10-cv-13440

HONORABLE STEPHEN J. MURPHY, III

### OPINION AND ORDER GRANTING MOTION
### FOR ATTORNEYS' FEES AND COSTS TO RELATOR HOUGHTON [111]

More than two years ago, the Court issued an omnibus order and denied

Relator Carbone's motion for attorneys' fees; the Court also granted Relator

Houghton's motion for attorneys' fees. ECF 152, PgID 2978–79. The Court ruled that

"Houghton can recover attorneys' fees only for work related to her TIM [Troy Internal

Medicine] claim." *Id.* at 2979. But the Court did not award a specific attorneys' fees

amount because Houghton's timekeeping records failed to show how much time her

counsel spent on the TIM claim. *Id.* The Court therefore ordered Houghton to provide

more specific briefing on the fees issue and allowed Beaumont to respond to the

supplemental brief. *Id.*

Since then, the parties submitted supplemental briefs and exhibits to resolve the attorneys' fees amount. ECF 153; 154; 156; 157. But the Court has not issued a ruling because the Court was divested of jurisdiction when the case went on interlocutory appeal. ECF 164. Now that the Sixth Circuit has returned a mandate, ECF 175, the Court will resolve the attorneys' fees amount for Houghton. The Court has reviewed the parties' briefs and a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f). For the reasons below, the Court will grant $127,557.76 to Houghton in attorneys' fees and costs.

## BACKGROUND

In the interest of judicial economy, the Court will adopt the background section of the Court's omnibus order. ECF 152, PgID 2969–70. In Houghton's supplemental brief, she argued that the Court should award $115,850 for her lead counsel's work related to the TIM claim, ECF 154-1, PgID 3004, and $21,240 for the associates' work related to the TIM claim, ECF 154-2, PgID 3011. Houghton also argued that the Court should award fees for a third of her counsel's general prosecution work that occurred before she knew about the other relators' False Claims Act claims against Beaumont. ECF 153, PgID 2985. Beaumont, however, argued that Houghton is entitled only to $12,169 for the work directly related to the TIM claim plus $2,763.32 for general prosecution work. ECF 156, PgID 3019–20. The parties did not dispute that Houghton is entitled to $1,297.96 for costs incurred during the litigation. ECF 111, PgID 1548; *see generally* ECF 122.

2

## LEGAL STANDARD

"In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.' A reasonable fee is 'adequately compensatory to attract competent counsel yet . . . avoids producing a windfall for lawyers.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) and *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) (emphasis and internal citation omitted). The Court possesses substantial discretion to award fees, but "must provide a clear and concise explanation of its reasons for the fee award." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quotation and citation omitted).

The Court begins its attorneys' fee award calculation by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The calculation provides the Court with the "fee applicant's 'lodestar.'" *Adcock-Ladd*, 227 F.3d at 349 (citations omitted). The Court may, "within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citation omitted).

Twelve factors influence the Court's adjustment of a fee award. *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)

3

the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Disabled Patriots of Am., Inc. v. Taylor Inn Enterps., Inc.*, 424 F. Supp. 2d 962, 965–66 (E.D. Mich. 2006) (quotation and citation omitted); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation."). The Court's analysis may subsume many of the factors. *See Hensley*, 461 U.S. at 434 n.9 (recognizing that a court's lodestar calculation may tacitly consider some of the *Johnson* factors).

## DISCUSSION

The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. To carry the burden, attorneys must maintain time records detailed enough to enable courts to review the reasonableness of the hours expended. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001). Courts then review the billing claims for, and exclude, "[e]xcessive, redundant, or otherwise unnecessary hours." *Butcher v. Bryson*, No. 3:12–00251, 2014 WL 4385876, at *3 (M.D. Tenn. Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 434).

The Court will first address the two lodestar factors: reasonableness of hourly rate and reasonableness of hours. *Hensley*, 461 U.S. at 433. Then, the Court will consider any other relevant factors. *Adcock-Ladd*, 227 F.3d at 349.

I.  <u>Reasonable Hourly Rate</u>

Beaumont did not object to the reasonableness of the hourly rates for Houghton's counsel. *See* ECF 122; ECF 134, PgID 2442 ("Defendant does not dispute that the hourly rate of $500 per hour requested for Relator Houghton's counsel is reasonable . . . [and] Defendant [does not] dispute the reasonableness of the hourly rates for associates."). In any event, the $500 hourly rate for Houghton's lead counsel and the $240 hourly rate for associates are reasonable.

To determine a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Houghton's counsel is entitled to fees at the current rates of $500 for lead counsel and $240 for associates because the case has languished for years, and the various suspensions in proceeding have led to a payment delay. *United States ex rel. Ellison v. Visiting Physicians Assoc., P.C.*, No. 1:04-cv-220, 2010 WL 2854137, at *2 (S.D. Ohio July 19, 2010) ("Courts in this Circuit have approved the use of current billing rates when there has been a delay in payment.") (collecting cases).

The $500 hourly rate for Houghton's lead counsel is reasonable based on the information detailed in the affidavits that Houghton submitted from experienced

attorneys in the field. ECF 111-5, PgID 1635; ECF 111-6, PgID 1642; 111-9, PgID 1674; *see B & G Mining, Inc. v. Dir., Off. of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) (noting that affidavits from experienced attorneys in the same field regarding an attorney's customary rate in a prevalent market can establish the reasonableness of rates). And the $240 hourly rate for associates is reasonable based on the State Bar of Michigan's Economics of Law Practice Survey. *See Hazzard v. Schlee & Stillman, LLC*, No. 13–10038, 2014 WL 117411, at *3 (E.D. Mich. Jan. 13, 2014) (noting that the Eastern District generally accepts the State Bar of Michigan's Economics of Law Practice Survey as its benchmark to determine reasonable hourly rates for attorneys), *adopted*, 2014 WL 634205 (E.D. Mich. Feb. 18, 2014). According to the survey, associates in Michigan billed a mean rate of $236 an hour in 2017. State Bar of Michigan, *2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report*, Table 3 (2017), https://bit.ly/3i5Pzdz [https://perma.cc/T5AJ-WHYZ]. For those reasons, the $500 and $240 hourly fees for Houghton's counsel are reasonable.

II.   <u>Reasonable Number of Hours</u>

Houghton submitted two spreadsheets—one for lead counsel, the other for associates—detailing those attorneys' billable hours and whether the hours related to the TIM claim or fell under a "general prosecution" category. ECF 153, PgID 2983–84; ECF 154-1; 154-2. Houghton claimed she is entitled to attorneys' fees for work in three timeframes: (1) work before she knew about the other relators' claims (May 2011 to February 2012); (2) work from the time she knew about the other relators'

claims until the settlement (March 2012 to October 5, 2018); and (3) post-settlement work (October 6, 2018 to present). ECF 153, PgID 2984. The Court will address each timeframe in turn.

A.    *Timeframe One: May 2011 to February 2012*

For the first timeframe, Houghton claimed that she is entitled to fees for one-third of work spent on "general prosecution" because that work occurred when Houghton did not know about the other Relators' complaints against Beaumont. *Id.* at 2984–85. According to Houghton, her counsel needed to investigate all her False Claims Act claims and so the "general prosecution" time was unavoidable. *Id.* at 2985. Houghton settled on the one-third amount because the TIM claim "was one of the three main theories of fraudulent activity" that Houghton alleged. *Id.* Houghton explained that this one-third cut was "equitably attributed" to the TIM claim. *Id.*

Besides "general prosecution" work, Houghton categorized five bill entries during this timeframe as work on the TIM claim. ECF 154-1, PgID 2993–94; ECF 154-2, PgID 3005–08. The Court will first address the TIM claim entries and then the "general prosecution" entries.

For the TIM claim entries, Beaumont objected to two entries—August 8, 2011 and August 11, 2011—because those entries did not explicitly mention or relate to the TIM claim. ECF 156, PgID 3019; *see* ECF 157-2, PgID 3032. But, based on the Court's review, the entries do relate to the TIM claim because the entries stemmed from research on August 7, 2011. *See* 154-2, PgID 3005 ("Research CON issue/Troy Internal Medicine/Beaumont Financials. . . . Research on CONs. . . . Register for

7

CON online review. Review online materials."). The Court will therefore categorize these two entries as TIM work. Based on the Court's review, the work and time detailed in the TIM entries appear reasonable. The Court will therefore award 6.1 associate hours for all TIM work under timeframe one to Houghton.

For the general prosecution work, the Court will not grant Houghton fees for one-third of her general prosecution time entries because that relief is unreasonable. Although her TIM claim was one of three claims, it is unreasonable to award Houghton one-third of the "general prosecution" time when not all that time went to prosecute the TIM claim. Put simply, not all False Claim Act claims are equally labor intensive. Thus, Beaumont correctly noted that awarding one-third of Houghton's general prosecution time would create a windfall. ECF 156, PgID 3019–20; *see Adcock-Ladd*, 227 F.3d at 349 ("The primary concern in an attorney fee case is that the fee awarded be reasonable" enough "to attract competent counsel" but avoid "producing [a] windfall for lawyers.").

Instead, the more reasonable way to award fees for the general prosecution work is based on the amount the TIM claim settled for compared to the other claims. That approach is more reasonable because it avoids "producing windfall[s] for lawyers" while also "attract[ing] competent counsel" to pursue claims. *Adcock-Ladd*, 227 F.3d at 349. Linking the TIM claim's success to the other claims' successes avoids awarding an excessive amount on less fruitful, yet merit-worthy claims. *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable

hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.").

Here, Beaumont settled the qui tam case with the Government for $84.5 million; $1.5 million was directly linked to Houghton's TIM claim. ECF 111, PgID 1545. Thus, Houghton's TIM claim was a minor claim in the qui tam lawsuit: 1.8 percent.[1] As a result, Houghton is entitled to 1.8 percent of the "general prosecution" work her lead counsel and the associates billed during the first timeframe. In total, her lead counsel's "general prosecution" work totaled 26.8 hours for the first timeframe, ECF 154-1, PgID 2993–94, and the associates' "general prosecution" work totaled 43.5 hours, ECF 154-2, PgID 3005–08.[2] As a result, for the first timeframe's general prosecution work, Houghton is entitled to fees for 0.47 hours of her lead counsel's work[3] and 0.77 hours for the associates' work.[4] In total, Houghton is entitled to 0.47 hours for her lead counsel's time and 6.87 hours for the associates' time.[5]

---

[1] 1.5 million / 84.5 million * 100 = 1.8%.

[2] The Court will subtract 0.8 lead counsel hours and 1 associate hour related to reviewing strategy with multiple qui tam actions and first-to-file research, ECF 154-1, PgID 2994; ECF 154-2, PgID 3008, because Houghton conceded she could not recover fees for those three entries. ECF 134, PgID 2440 ("Relator Houghton concedes that the three time entries related to first-to-file research are not recoverable, because any issue related to first-to-file ultimately became irrelevant when the Government intervened, proceeded with the consolidated cases, and settled the cases."); *see also* ECF 122, PgID 2202–03 (objecting to the February 13, 2012 and the February 29, 2012 entries).

[3] 26 hours * 0.018 = 0.47.

[4] 42.5 hours * 0.018 = 0.77.

[5] 6.1 hours + 0.77 hours = 6.87.

B.      *Timeframe Two: March 2012 to October 5, 2018*

For the second timeframe, Houghton claimed most of her counsel's work went to the TIM claim while some work went to the general prosecution of the qui tam case. ECF 153, PgID 2986–87. In total, Houghton claimed her lead counsel billed 213.7 hours and the associates worked 61.8 hours under the second timeframe on the TIM claim. *Id.* at 2987.

Beaumont objected on three grounds. First, most of the time entries lacked an explicit reference to the TIM claim and thus, according to Beaumont, most entries lack enough detail for the Court to award attorneys' fees. ECF 156, PgID 3019. Second, Beaumont pointed out several entries categorized as TIM work that lacked any link to the TIM claim. *Id.* at 3018 (listing entries on September 7 and 10, 2018 about relator share issues). And third, Beaumont argued that Houghton could not recover 13.7 hours of fees based on settlement work because those costs were assigned to the parties under the settlement agreement. *Id.* (listing 13.7 hours' worth of entries). The Court will address each objection in turn.

To address the first objection, Houghton explained how her counsel's TIM-related work focused on substantive issues, briefing and procedural issues, and coordination with co-relators. *See generally* ECF 154-1; 154-2. Although the exact description under many entries for this period lacked explicit mentions of the TIM claim, the omissions do not prevent the Court from determining whether the work related to the TIM claim. Houghton's counsel identified the nature of TIM work in the three categories just explained. *See generally* ECF 154-1; 154-2. And that

10

organization alone allows the Court to determine the reasonableness of the hours expended on the TIM claim. The Court will therefore reject Beaumont's strict rule requiring an explicit reference to the TIM claim.

In the second objection, Beaumont identified two entries on September 7 and 10, 2018 that detailed Houghton's lead counsel working 0.8 hours on relator share issues. ECF 156, PgID 3018. Because the issue about relator shares lacks a connection to the TIM claim's prosecution or settlement, the Court will deny fees for that work because, without more detail, the work was unnecessary to prosecute the TIM claim. As a result, the Court will subtract 0.8 hours from lead counsel's time during this period.

In the third objection, Beaumont pointed out that 13.7 hours relate to settlement issues for which Houghton agreed to bear the costs under the settlement agreement. ECF 156, PgID 3018–19. The settlement agreement stated that "[e]xcept as otherwise provided, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement." ECF 120-1, PgID 2138. Houghton countered that the first part of the clause, "except as otherwise provided," allows her counsel to obtain fees for time incurred in settlement discussions. ECF 134, PgID 2441–42. The agreement also exempted "any claim Relators may have for expenses, attorneys' fees and costs under 31 U.S.C. § 3730(d)." ECF 120-1, PgID 2133; *see also id.* at 2137 ("Relators shall also stipulate to the voluntary dismissal of all claims against any defendants other than WBH. The dismissals shall be with prejudice as to the Relators, except as to

11

Relators' . . . (b) claims for reasonable expenses, attorneys' fees and costs . . . ."). But the plain text of the settlement agreement bars Houghton from seeking fees related to the settlement.

"Settlement agreements are a type of contract and are therefore governed by contract law" in the jurisdiction governing the contract. *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Here, federal law governs the parties' settlement agreement. ECF 120-1, PgID 2138 ("This Agreement is governed by the laws of the United States."). Federal law applies the plain meaning of a contract when the terms "are clear and unambiguous." *United States v. Swanson*, 618 F. Supp. 1231 (E.D. Mich. 1985). The settlement agreement's plain language states, "[e]xcept as otherwise provided, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement." ECF 120-1, PgID 2138. The only claims carved out from the clause concern attorneys' fees and costs incurred during the prosecution of an action under § 3730(d). *Id.* at 2133. Because the parties explicitly agreed to bear the costs of settlement, Houghton is barred from collecting fees for the 13.7 hours worked on settlement. *See* ECF 154-1, PgID 3003. The Court will therefore subtract 13.7 hours of work from Houghton's lead counsel that are barred by the settlement agreement.

In total, Houghton is entitled to fees for 199.2 hours of lead counsel's work during timeframe two.[6] ECF 154-1, PgID 2994–3003. She is also entitled to fees for 61.8 hours of associates' work. ECF 154-2, PgID 3008–10. Based on the Court's

---

[6] 213.7 hours − 0.8 hours − 13.7 hours = 199.2 hours.

12

review, those hours are reasonable. After all, 261 hours of work on a $1.5 million settlement over nearly six and a half years shows that Houghton's counsel worked efficiently.

C.    *Timeframe Three: October 6, 2018 to Present*

For the third timeframe, Houghton sought fees for 38.6 hours that were necessarily incurred to prosecute the TIM claim after settlement. ECF 153, PgID 2989. Beaumont objected that Houghton sought fees for work that had nothing to do with the TIM claim. ECF 156, PgID 3018. Instead, the work related to relator share disputes. *Id.* (listing December 21, 2018 entry).

As the Court explained in the timeframe two discussion, because the issue about relator shares lacks a connection to the TIM claim's prosecution, the Court will deny fees for that work because, without more description, the work was unnecessary to prosecute the TIM claim. The Court will therefore subtract 8 hours from lead counsel's time for the third timeframe.

For the other work in the third timeframe, the Court finds the work related to the fee petition and is reasonable. *See Gonter*, 510 F.3d at 620 (allowing attorneys to recover fees for post-judgment time spent on attorney fee applications). In total, Houghton is entitled to fees for 10 hours of lead counsel's work during the third timeframe.[7] ECF 154-1, PgID 3004. She is also entitled to fees for 20.6 hours of associates' work.

---

[7] 18 hours − 8 hours = 10 hours.

III.   <u>Lodestar Amount</u>

Based on the hours and rates discussed above, the lodestar amount for each member of Houghton's legal team is as follows:

- Lead Counsel: $104,835 (209.67 hours multiplied by $500/hour)[8]

- Associates: $21,424.80 (89.27 hours multiplied by $240/hour)[9]

- Total: $126,259.80

IV.   <u>Other Factors</u>

The lodestar calculation subsumes several factors relevant to the Court's analysis.[10] But, as discussed above, the lodestar method does not include all relevant factors, so the Court will address the remaining factors now. The only factor that the parties briefed was the amount involved and the results obtained by Houghton's counsel. *See* ECF 156, PgID 3019–20. The Court will first address the results obtained factor and then address other factors.

   A.   *Amount Involved and Results Obtained*

The Court briefly discussed the amount involved and the results obtained factor when the Court addressed Houghton's first timeframe of hours worked on

---

[8] 0.47 (timeframe one) + 199.2 (timeframe two) + 10 (timeframe three) = 209.67.

[9] 6.87 (timeframe one) + 61.8 (timeframe two) + 20.6 (timeframe three) = 89.96.

[10] For example, the reasonableness of hours worked and of hourly rates includes: "time and labor required," "the skill requisite to perform the legal service properly," "the customary fee," "time limitations imposed by the client or the circumstances," "the experience, reputation, and ability of the attorneys," and the "nature and length of the professional relationship with the client." *See Disabled Patriots*, 424 F. Supp. 2d at 965–66.

14

"general prosecution." But the factor does not mandate reducing the lodestar amount for three reasons. For one, although the TIM claim was only 1.8 percent of the total settlement, a $1.5 million settlement on a claim is still an impressive result. ECF 111, PgID 154-45. Two, expending $126,260 worth of billable time to achieve a $1.5 million settlement is efficient because the time Houghton's counsel worked is less than 10 percent of the TIM claim settlement. And three, the Court has already incorporated the factor in the earlier adjustment under the first timeframe and thus the Court will avoid double counting the factor. All told, the Court finds that the factor does not favor adjusting the lodestar amount.

        B.      *Awards in Similar Cases*

Neither party briefed the factor, but the Court will note that other counsel in this case—such as Relator Carbone's counsel—were barred from receiving an award under the first-to-file rule. ECF 152, PgID 2979. The factor does not suggest a reduction of the lodestar amount.

        C.      *Desirability of the Case*

Despite neither party having briefed the factor, it does not warrant adjusting the lodestar amount. Qui tam cases are high-risk, high-reward cases. *See, e.g.*, ECF 111-5, PgID 1635; ECF 111-6, PgID 1642; ECF 111-7, PgID 1646–47; ECF 111-8, PgID 1656; ECF 111-9, PgID 1673. That said, the precise facts of the present case do not make the case undesirable for an attorney willing to take the inherent risks found in any qui tam litigation. The factor therefore does not warrant adjusting the lodestar amount.

D.    *Novelty and Difficulty of the Questions Involved*

Neither party briefed the factor, but the Court is aware of how difficult the present case has been for the parties. Generally, qui tam cases are complex and require specialized lawyering. *See, e.g.*, ECF 111-5, PgID 1635; ECF 111-6, PgID 1642; ECF 111-7, PgID 1646–47; ECF 111-8, PgID 1656; ECF 111-9, PgID 1673. Based on the Court's experience, the present case is the longest, most complex case to which the Court has been assigned. Because of those considerations, the Court believes an upward adjustment to the lodestar amount is warranted.

E.    *Preclusion from Other Employment*

Although neither party briefed the factor, the Court finds that it favors a downward adjustment to the lodestar amount. Houghton's lead counsel worked 282 hours from 2011 to 2019 and the associates worked 171 hours during the same time. ECF 154-1, PgID 3004; ECF 154-2, PgID 3011. In total, Houghton's counsel worked 453 hours in nine years. Put differently, Houghton's counsel spent an average of fifty hours each year on the case. It follows that Houghton's counsel was not precluded from undertaking other work.

F.    *Calculation of Adjustments*

Given that the Court has found one factor favors an upward adjustment, while another factor favors a downward adjustment, the Court finds that the adjustments even out. For that reason, the Court will not adjust the lodestar calculation based on the above factors.

V.     <u>Award</u>

The final attorneys' fee is $126,259.80. Houghton is also entitled to receive her costs, which totaled $1,297.96. ECF 111-4, PgID 1631; *see* 31 U.S.C. § 3730(d)(1) ("Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."). The costs are reasonable, and the Court will award them. As a result, Plaintiff's total award for costs and attorneys' fees is $127,557.76.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Relator Houghton's fee petition [111] is **GRANTED**.

**IT IS FURTHER ORDERED** that Relator Houghton is **ENTITLED** to a total award of **$127,557.76**, which includes $126,259.80 for attorneys' fees and $1,297.96 for costs.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 1, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 1, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

17